1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  DENNIS ESHELMAN,                )   NO. CV 05-04428-MAN
                                    )
12                 Plaintiff,       )
           v.                       )   MEMORANDUM OPINION AND ORDER
13                                  )
                                    )
14  MICHAEL J. ASTRUE,[1]           )
    Commissioner of the             )
15  Social Security Administration, )
                                    )
16                 Defendant.       )
    _____)

17

18       Plaintiff filed a Complaint on June 17, 2005, seeking review of the

19  denial by the Social Security Commissioner ("Commissioner") of his claim

20  for Disability Insurance Benefits ("DIB").   On October 5, 2007, the

21  parties consented to proceed before the undersigned United States

22  Magistrate Judge.   Pursuant to 28 U.S.C. § 636(c), the parties filed a

23  Joint Stipulation ("JS") on April 3, 2006, in which:  Plaintiff seeks an

24  order reversing the Commissioner's decision and directing the payment of

25

26  _____

27       [1]  Michael J. Astrue became the Commissioner of the Social
    Security Administration on February 12, 2007, and is substituted in
    place of former Commissioner Joanne B. Barnhart as the Defendant in this
28  action.  (See Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social
    Security Act, last sentence, 42 U.S.C. § 405(g).)

benefits or, alternatively, remanding the case for further proceedings; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff protectively filed his application for DIB on January 31, 2000. (Administrative Record ("A.R.") 61-64.)  Plaintiff claims to have been disabled since November 8, 1996, due to compressed vertebrae in his neck; pain in his neck, shoulders, and lower back; numbness in his left hand; and headaches.  (A.R. 62, 74.)  Plaintiff has past relevant work experience as an electrical lighting technician.  (A.R. 82-83, 618.)

The Commissioner denied Plaintiff's claim for benefits on July 21, 2000.  (A.R. 50-53.)  On July 30, 2001, Plaintiff, who was represented by counsel, appeared at a hearing before Administrative Law Judge Robert K. Rogers ("ALJ Rogers").  (A.R. 29-45.)  On October 25, 2001, ALJ Rogers denied Plaintiff's request for benefits.  (A.R. 13-22.)  On September 12, 2002, the Appeals Council denied Plaintiff's request for review of ALJ Rogers' decision.  (A.R. 5-6.)  Plaintiff subsequently filed a complaint with this Court.  (A.R. 582-85.)

Pursuant to this Court's June 20, 2003 decision, the Appeals Council remanded the case for further administrative proceedings.  (A.R. 575-81, 586-89.)  In so doing, the Appeals Council instructed the ALJ to:  (1) give further consideration to the treating source opinion and explain the weight given to such opinion evidence; (2) give further

2

consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale, with specific references to the evidence of record, in support of the assessed limitations; and (3) if warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base.  (A.R. 589.)  Thereafter, on April 26, 2004, Plaintiff, who was represented by counsel, appeared at a hearing before Administrative Law Judge Theodore T. Gotsch ("ALJ").  (A.R. 789-845.) On April 5, 2005, the ALJ issued a partially favorable decision.  (A.R. 532-42.)  The ALJ found that Plaintiff was disabled from his alleged onset date of November 8, 1996, through September 24, 1999, but not thereafter.  (A.R. 541.)  Plaintiff subsequently filed the instant Complaint.

**SUMMARY OF ADMINISTRATIVE DECISION**

In his April 5, 2005 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.[2]  (A.R. 540.)  The ALJ determined that Plaintiff had "severe" impairments, taken singularly or in combination, of "minor arthritic findings of the cervical spine," left foot pain secondary to plantar fasciitis, and mild tendonopathy of the rotator cuff.  (*Id.*)  However, Plaintiff's impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (*Id.*)

---

[2]    The ALJ determined that Plaintiff met the nondisability requirements for a period of disability and DIB, and he was insured through June 30, 2000.  (A.R. 540.)

3

The ALJ further found that Plaintiff's allegations regarding his limitations were not totally credible. (A.R. 538, 540.)  He opined that between November 8, 1996, and September 24, 1999, Plaintiff was unable to perform the full range of sedentary work activities, and therefore, Rule 201.12 of the Medical Vocational Guidelines (the "Grids") directed a finding of disability. (A.R. 541.)  However, from September 25, 1999, and thereafter, the ALJ determined that Plaintiff:  could perform light work, *i.e.*, lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; had limited capacity to reach above shoulder level with his left upper extremity; and required a sit/stand option. (*Id.*)

The ALJ concluded that Plaintiff was an "individual of advanced age" as of November 10, 2002, and an "individual closely approaching advanced age" prior to that date, had a "high school (or high school equivalent) education," and had no transferable skills from his past relevant work and/or transferability of skills was not an issue in this case.[3] (A.R. 539, 541.)  Based on his residual functional capacity finding, the ALJ determined that Plaintiff could not perform his past relevant work as an electrical lighting technician. (A.R. 538, 540.)

_____

[3]  Although the ALJ found that Plaintiff had "no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case," the ALJ confusingly noted that Plaintiff "retained transferable skills to such jobs as cable splicer, and wire harness assembler." (A.R. 541.)  Further, at the April 26, 2004 hearing, the vocational expert, David A. Rinehart, testified that Plaintiff's transferable skills were inapplicable to work categorized as light exertion *with a sit/stand option*. (A.R. 842-43.)  But the ALJ mistakenly noted Mr. Rinehart's prior opinion that a hypothetical individual with the above-noted residual functional capacity, but *without the need for a sit/stand option*, would have transferable skills to other work such as a cable splicer or wire harness assembler. (A.R. 840-42.)  As the ALJ concluded that Plaintiff required a sit/stand option, Plaintiff could not perform the work of a cable splicer or wire harness assembler.  Therefore, on remand, the ALJ should clarify his findings concerning Plaintiff's transferable skills.

4

The ALJ found, using Rules 202.15 and 202.07 of the Grids as a framework and relying on the testimony of a vocational expert, that Plaintiff could perform work as an assembler of small products, an information clerk, or a fundraiser.[4]  (A.R. 540-41.)  Accordingly, the ALJ found that Plaintiff was not "disabled" within the meaning of the Social Security Act.  (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance - it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also*

---

[4]    The ALJ noted, in the "Evaluation of the Evidence" section of his opinion, that his conclusion was based on Mr. Rinehart's testimony.  (A.R. 540.)   However, the ALJ failed to make any reference to his reliance on Mr. Rinehart's testimony in the "Findings" section, as he only mentioned the use of the Grids in concluding that Plaintiff could perform other work.  (A.R. 541.)

1  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is
2  responsible for determining credibility, resolving conflicts in medical
3  testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d
4  1035, 1039 (9th Cir. 1995). This Court must uphold the Commissioner's
5  decision if it is supported by substantial evidence and free from legal
6  error, even when the record reasonably supports more than one rational
7  interpretation of the evidence. *Id.* at 1039-40; *see also* Morgan v.
8  Commissioner of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999);
9  Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th
10 Cir. 1995).

11
12                              **DISCUSSION**
13
14      Plaintiff argues that the ALJ erred in finding that Plaintiff was
15 not disabled after September 24, 1999. (JS at 4-5.) In particular,
16 Plaintiff contends that proper application of the Grids would have
17 directed a finding of disability as of November 10, 2002. (JS at 5.)
18 In addition, Plaintiff alleges that the ALJ improperly discounted
19 Plaintiff's subjective pain allegations. (*Id.*)
20
21  A.    **The ALJ Improperly Discounted Plaintiff's Symptom Testimony**.
22
23      Once a disability claimant produces objective medical evidence of
24 an underlying impairment that could reasonably be expected to cause some
25 level of pain of the type alleged by the claimant, the claimant's
26 subjective complaints regarding the severity of his pain may not be
27 discredited based solely on a lack of objective medical evidence to
28 corroborate the extent of the alleged pain. Smolen, 80 F.3d at 1281-84;

                                    6

1   Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen,

2   885 F.2d 597, 601 (9th Cir. 1989).   This rule is based on the

3   recognition that pain is an inherently subjective phenomenon, which

4   cannot be objectively verified or measured and varies significantly

5   among individuals.   Bunnell, 947 F.2d at 347.   Unless the evidence

6   suggests affirmatively that Plaintiff is malingering, the ALJ must

7   provide clear and convincing reasons for rejecting Plaintiff's excess

8   pain or symptom testimony.   Dodrill v. Shalala, 12 F.3d 915, 918 (9th

9   Cir. 1993).

10

11       Although the absence of objective medical findings to support the

12   degree of pain cannot be the sole reason to reject subjective

13   complaints, it has been recognized as a valid consideration in the

14   discrediting of subjective symptom testimony.   *See* Wainwright v.

15   Secretary of Health & Human Servs., 939 F.2d 680, 682 (9th Cir. 1991).

16   Other factors that the ALJ may use to discredit a claimant's subjective

17   complaints include:  (1) ordinary techniques of credibility evaluation,

18   such as the claimant's reputation for lying, inconsistent statements

19   concerning the symptoms, and other testimony by the claimant that

20   appears less than candid; (2) unexplained or inadequately explained

21   failure to seek treatment or to follow a prescribed course of treatment;

22   and (3) the claimant's daily activities.   Smolen, 80 F.3d at 1284; *see*

23   *also* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002)(listing

24   factors including: (1) the claimant's reputation for truthfulness; (2)

25   inconsistencies either in the claimant's testimony or between her

26   testimony and her conduct; (3) the claimant's daily activities; (4) the

27   claimant's work record; and (5) testimony from physicians and third

28   parties concerning the nature, severity, and effect of the symptoms of

which the claimant complains)(citing <u>Light v. Social Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997)).

At the April 26, 2004 hearing, Plaintiff testified that he could: lift 10 pounds, although not on a continual basis; continuously walk for about a half of a mile; continuously drive for about one hour (*i.e.*, sit for about one hour); and continuously stand for about 20 minutes.  (A.R. 816-17, 832, 836.)   In addition, he stated that, due to his neck pain, he needed to lay down "anywhere from 15 minutes to an hour" every day. (A.R. 819.)   In discounting Plaintiff's subjective complaints, the ALJ explained, in pertinent part:

> In making my determinations, I have also considered [Plaintiff's] subjective complaints.  However, I do not find [Plaintiff's] allegations sufficiently credible to justify any further limitations than those established by the objective medical record.   I find that [Plaintiff's] allegations of total disability are inconsistent with his activities. [Plaintiff] admits that he is able to care for all [of] his daily needs, such as grooming, cooking, cleaning, grocery shopping, and laundry.  Additionally, Social Security earnings records show [Plaintiff] worked in 2003 (Exhibit 5-D).  This breadth of daily activity is not consistent with a finding of total disability.
>
> Furthermore, [Plaintiff's] subjective complaints are not consistent with the treatment he receives.  He alleged that he is in constant pain, but treats his pain with only

nonprescription treatments and has not sought more aggressive pain treatment.  Additionally, he has not sought any medical treatment for the past six years.  It is reasonable to assume that if [Plaintiff] were as disabled as he claimed, he would have told his doctor, and the doctor would have ordered more aggressive treatment.

(A.R. 538.)

Plaintiff alleges that the ALJ improperly discounted Plaintiff's subjective pain allegations.  (JS at 5.)  As discussed in detail below, the Court agrees.

The ALJ improperly concluded that Plaintiff's activities of daily living were inconsistent with his subjective allegations of pain.  (A.R. 538.)  Plaintiff's testimony regarding his activities of daily living suggests that they are actually more limited than they have been portrayed by the ALJ.  See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998)(holding that the ALJ improperly discounted a claimant's subjective testimony when the ALJ paraphrased the record inaccurately).  Plaintiff testified that he is able to go to a grocery store "about twice a month" and do his laundry at a Laundromat "once a month";  a review of the record reveals that the grocery store and Laundromat are both located near Plaintiff's house (i.e., the grocery store is within a block and a half from his house, and the Laundromat is "right around the corner" from his house).  (A.R. 831.)  In addition, Plaintiff stated that he could only drive for about 60 miles, or one hour, before needing to rest.  (A.R. 832.)

1    Given the limited nature of Plaintiff's activities of daily living,
2    the ALJ has failed to show their inconsistency with his claimed
3    disability.  *See* Reddick, 157 F.3d at 722 ("Only if the level of
4    activity were inconsistent with [c]laimant's claimed limitations would
5    these activities have any bearing on [c]laimant's credibility.").
6    Furthermore, these limited activities do not consume a substantial part
7    of Plaintiff's day and, thus, are not reflective of his ability to
8    sustain gainful employment.  *See* Vertigan v. Halter, 260 F.3d 1044, 1050
9    (9th Cir. 2001)(stating that an ALJ may not discredit a claimant's
10   allegations based on the inconsistency between her daily activities and
11   her disability, where the activities do not consume a substantial part
12   of her day); *cf.* Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)
13   ("[I]f a claimant engages in numerous daily activities involving skills
14   that could be transferred to the workplace, the ALJ may discredit the
15   claimant's allegations upon making specific findings relating to those
16   activities.").  Finally, these daily activities do not support the ALJ's
17   decision that Plaintiff could sustain work at the light exertional
18   level.  *See* Fair, 885 F.2d at 603 (noting that a claimant is not
19   required to be "utterly incapacitated" in order to be disabled, and
20   "many home activities are not easily transferable to what may be the
21   more grueling environment of the workplace").

22

23   Additionally, the ALJ improperly concluded that Plaintiff's medical
24   treatment was inconsistent with his subjective testimony.  (A.R. 538.)
25   Plaintiff testified that he had not received medical treatment since
26   1999, because he did not have medical insurance.  (A.R. 816.)  The ALJ's
27   conclusion that Plaintiff's failure to seek additional medical treatment
28   demonstrates that he was exaggerating his pain, without taking into

consideration Plaintiff's financial limitations, was improper.  *See*

Smolen, 80 F.3d at 1284 (claimant's failure to obtain medication because

she could not afford it provided a valid reason for her failure to do

so).  Therefore, Plaintiff's failure to seek medical treatment, because

he did not have medical insurance, is not a clear and convincing reason

for the ALJ to discount Plaintiff's credibility.


      Plaintiff's failure to seek more aggressive pain treatment also is

not a clear and convincing reason for rejecting Plaintiff's testimony.

Plaintiff previously had undergone multiple series of epidural

injections into the cervical spine, with only temporary benefit.  (A.R.

406-07, 627, 632-33, 635.)  Moreover, Plaintiff testified that his

physicians opined that surgery was the only solution for his neck pain.[5]

(A.R. 817.)  Plaintiff did not opt for the surgery, because his doctors

told him that if he underwent surgery, he could "possibly end up in a

wheelchair."  (*Id.*)  *See* Smolen, 80 F.3d at 1284 ("Where a claimant

provides evidence of a good reason for not taking medication for her

symptoms, her symptom testimony cannot be rejected for not doing

_____

      [5]      Prior to 2000, Plaintiff's extensive medical treatment is
well-documented.  For example, on May 22, 1998, Dr. Robert Audell, an
orthopedist, noted that if Plaintiff did not improve with physical
therapy and conservative care, Plaintiff would likely need surgery.
(A.R. 401.)  On August 4, 1998, Dr. Audell noted that he had discussed
the possibility of surgery with Plaintiff, although "[he had] given
[Plaintiff] no guarantees about whether [Plaintiff] could return back to
his prior job duties with this procedure."  (A.R. 399.)  On January 5,
1999, Dr. Audell noted that if epidural injections were not helpful,
then consideration should be given to a surgery of the cervical spine in
the form of a discectomy and fusion, which would be the last option.
(A.R. 395.)  On August 10, 1999, Dr. Audell opined that Plaintiff was
nearing his maximum benefit from formal therapy.  (A.R. 378.)
Thereafter, on September 21, 1999, Dr. Steven Nagelberg, an orthopedic
surgeon, opined that surgical intervention (*i.e.*, an anterior cervical
discectomy and fusion at the C5-6 level, with iliac crest bone graft)
would help relieve Plaintiff's neck pain.  (A.R. 635.)

so.")(citations omitted); 20 C.F.R. § 404.1530(c)(4) (not following
treatment because it is very risky for the claimant is a good reason for
the noncompliance). Accordingly, the ALJ improperly concluded that
Plaintiff's subjective complaints were inconsistent with the treatment
he received.

Moreover, the ALJ incorrectly noted that Plaintiff was being
treated with "only nonprescription treatments." However, Plaintiff
testified that he took Flexeril, a prescribed muscle relaxant.[6] (A.R.
816.) Plaintiff further testified that did not consistently take the
medication, because it "knock[s] [him] out." (A.R. 816-17, 826.) In
particular, he testified that he could not work while taking the
medication, because he would fall "asleep or [feel] hung over." (A.R.
820.)

The ALJ's assertion that Plaintiff worked in 2003, similarly fails
to satisfy the standard of a clear and convincing reason for
discrediting Plaintiff's subjective pain testimony. (A.R. 538.) The
significance of Plaintiff's return to work is diminished by the fact
that he worked for only eight to ten days during a period of two to
three months. (A.R. 792.) In addition, although some days at work
during that time required only light exertion (while most of the days
required heavy exertion), Plaintiff still had to take Flexeril, because
he experienced muscle spasms and pain while working. (A.R. 829.)
Moreover, as noted above, Flexeril caused him to fall asleep, and

---

[6]      Plaintiff testified that his physician would give him free
samples of Flexeril, because he did not have medical insurance. (A.R.
820-21.)

1  therefore, he could not perform his work.  (A.R. 816, 830.)

2

3      Thus, the ALJ failed to provide clear and convincing reasons for

4  rejecting Plaintiff's subjective pain testimony, and the ALJ's

5  conclusion that Plaintiff's pain allegations were not sufficiently

6  credible did not rest on substantial evidence.

7

8      **B.   <u>Proper Application Of The Grids Will Be Required On Remand</u>**.

9

10     On remand, the ALJ's assessment of Plaintiff's residual functional

11  capacity may change, because he must reevaluate it following his

12  reevaluation of Plaintiff's subjective symptom testimony.   Where a

13  claimant suffers from both exertional and non-exertional impairments,

14  benefits must be awarded if the Grids direct a finding of disability on

15  the *exertional impairments alone*.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152,

16  1155 (9th Cir. 1989).

17

18     Therefore, because the ultimate finding regarding Plaintiff's

19  residual functional capacity may change, the Court does not address the

20  second issue raised by Plaintiff (*i.e.*, whether the ALJ erred in his

21  application of the Grids).

22

23     **C.   <u>Remand Is Required</u>**.

24

25     Plaintiff contends that his subjective testimony should be credited

26  as true, and the benefits sought should be awarded.  (JS at 5.)

27  However, the decision whether to remand for further proceedings or to

28  order an immediate award of benefits is within the district court's

13

discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).
Where no useful purpose would be served by further administrative
proceedings, or where the record has been fully developed, it is
appropriate to exercise this discretion to direct an immediate award of
benefits.  Id. at 1179 ("the decision of whether to remand for further
proceedings turns upon the likely utility of such proceedings").
However, where there are outstanding issues that must be resolved before
a determination of disability can be made, and it is not clear from the
record that the ALJ would be required to find the claimant disabled if
all the evidence were properly evaluated, remand is appropriate.  Id.

    Here, as discussed above, the ALJ failed to assess properly
Plaintiff's credibility, due to several errors, and possibly his
residual functional capacity.  Because it is unclear what work Plaintiff
could perform, if any, if his subjective complaints were assessed
properly, remand is necessary to make a new disability determination.
Cotton v. Bowen, 799 F.2d 1403, 1408-09 (remand needed when the ALJ
failed to take into account all of the claimant's impairments).

    Plaintiff's arguments, that the Commissioner does not receive
"endless opportunities to get it right," and benefits should be awarded
when "the delay involved in repeated remands has become unconscionable"
or when the agency has displayed "obduracy" in complying with the law of
the case, are unavailing.  (JS at 5.)  Unlike the Miller case upon which
Plaintiff relies, this case is being remanded for only the second time.[7]

_____

    [7]    In Miller v. Chater, 99 F.3d 972 (10th Cir. 1996), the
Commissioner remanded the case five times.  This will be the second
remand of the case, following a stipulated remand by the parties that

14

In addition, there is no evidence of "obduracy" by the ALJ in complying with the law of the case.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: October 12, 2007

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

occurred on June 20, 2003.

15